IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| BRADLEY T. OTTO, as personal representative of the estate of Blaine P. Otto, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>NEWFIELD EXPLORATION COMPANY, and NEWFIELD PRODUCTION COMPANY, and NEWFIELD EXPLORATION MID-CONTINENT, INC.,<br><br>Defendant. | CV 15-66-BLG-SPW<br><br>OPINION AND ORDER |

Before the Court is a Motion to Strike filed by Defendants Newfield Exploration Company, Newfield Product Company, and Newfield Exploration Mid-Continent, Inc., (Newfield). (Doc. 35). Newfield asks the Court to strike Plaintiff Estate of Blain P. Otto's liability expert witnesses Edward R. Ziegler (Ziegler) and Dr. Tee L. Guidotti (Dr. Guidotti) under Federal Rule of Evidence 702. For the reasons discussed below, the Court DENIES Newfield's Motion to Strike.

I.  **Background.**

1

Blaine Otto (Otto) was employed by a company that provided tank inspection services, among other things, to Newfield on a contract basis at various well sites in the Bakken Shale Oil Field. (Doc. 1). On July 18, 2013, Otto was found dead on the catwalk of an oil storage tank. (Doc. 1). Otto's estate filed suit, alleging Otto died of exposure to deadly vapors due to intentional, reckless, and/or negligent conduct by Newfield. (Doc. 1). Newfield disputes the cause of Otto's death and denies its conduct was intentional, reckless, or negligent. (Doc. 6). Otto's estate retained Dr. Guidotti and Ziegler as liability experts.

Dr. Guidotti is a physician, qualified as a board-certified specialist in internal medicine, pulmonary medicine, and occupational medicine. (Doc. 36-1 at 1). He is also a retired professor of Occupational and Environmental Medicine at the George Washington University Medical Center, where he was Chair of the Department of Environmental and Occupational Health of the School of Public Health and Health Services and Director of the Division of Occupational Medicine and Toxicology, Department of Medicine, School of Medicine and Health Services. (Doc. 36-1 at 1). He has worked with the oil and gas industry for over 35 years and is currently an international consultant. (Doc. 36-1 at 1).

Dr. Guidotti's opinion is that Otto's death was caused by exposure to deadly vapors. (Doc. 36-1 at 8). Dr. Guidotti formulated his opinion after review of numerous documents and items of evidence, including the autopsy report, the

2

OSHA fatality report, and information disclosed during discovery. (Doc. 36-1 at 1-2). Based on the evidence, Dr. Guidotti listed four possible causes of Otto's death: (1) inhalation of hydrocarbon vapors; (2) depleted oxygen levels due to displacement by hydrocarbon vapors; (3) inhalation of hydrogen sulfide; and (4) natural causes. (Doc. 36-1 at 3-4). Dr. Guidotti then proceeded to eliminate each cause based on its likelihood, concluding inhalation of hydrocarbon vapors was the most likely cause of Otto's death. (Doc. 36 at 3-8).

Ziegler is a petroleum and natural gas engineer, a registered Professional Engineer, and a Certified Safety Professional. (Doc. 36-4 at 4). He is also trained as an OSHA 500 Program Instructor. (Doc. 36-4 at 4). Ziegler has worked in the oil and gas business for over 35 years. (Doc. 36-4 at 4).

Ziegler's opinion is that Newfield's conduct was grossly below any industry standard. (Doc. 36-4 at 19). Ziegler formulated his opinion after review of numerous documents and pieces of evidence, including safety regulations, the OSHA file, and information disclosed during discovery. (Doc. 36-4 at 3).

**II. Law.**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that a "witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Ninth Circuit has interpreted Rule 702 to require that expert testimony be both relevant and reliable. *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 860 (9th Cir. 2014). The relevance inquiry asks whether the expert's testimony logically advances a material aspect of the party's case. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014).

The reliability inquiry asks whether the expert's testimony has a reliable basis in the knowledge and experience of the discipline. *AstenJohnson*, 740 F.3d at 463. The concern is with the soundness of the expert's methodology, not the expert's conclusions. *AstenJohnson*, 740 F.3d at 463. Accordingly, the Supreme Court has suggested several factors to help determine reliability: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *AstenJohnson*, 740 F.3d at 463 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-94 (1993)). The *Daubert* factors are not definitive; district courts have broad discretion to test and determine

an expert's reliability. *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014).

## III. Discussion.

Newfield does not contest the qualifications of either Dr. Guidotti or Ziegler. Instead, Newfield argues the opinions of Dr. Guidotti and Ziegler are irrelevant and unreliable.

The Court holds the opinions of Dr. Guidotti and Ziegler are relevant. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Pyramid*, 752 F.3d at 813. The cause of Otto's death is a disputed fact. Dr. Guidotti's opinion is that Otto died of exposure to deadly vapors, not of natural causes. Dr. Guidotti's opinion is therefore relevant to a material disputed fact. Whether Newfield violated safety standards is also a disputed fact. Zeigler's opinion is that Newfield violated numerous safety regulations and industry standards. Zeigler's opinion is therefore relevant to a material disputed fact.

The Court addresses the reliability of each expert in turn.

### A. Dr. Guidotti

Dr. Guidotti's opinion is based on a methodology known as a differential diagnosis. Differential diagnosis is a "standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most

5

probable one is isolated." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057 (9th Cir. 2003) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)). "[F]ederal courts, generally speaking, have recognized that a properly conducted differential diagnosis is admissible under *Daubert*." *Clausen*, 339 F.3d at 1057.

The first step in a differential diagnosis is to compile a comprehensive list of causes that are capable of causing the person's symptoms or mortality. *Clausen*, 339 F.3d at 1057-58. An expert that rules in a cause not capable of producing the result may be unreliable. *Clausen*, 339 F.3d at 1058. An expert that neglects to consider a cause that may have produced the result may also be unreliable. *Clausen*, 339 F.3d at 1058. The next step in a differential diagnosis is to engage in a process of elimination on the basis of the evidence so as to reach a conclusion as to the most likely cause. *Clausen*, 339 F.3d at 1058.

Here, Dr. Guidotti compiled a list of four possible "mechanisms" that could have caused Otto's death. Dr. Guidotti then determined, based on the evidence before him, which of the mechanisms was the most likely cause. Newfield argues Dr. Guidotti's differential diagnosis is unreliable because Dr. Guidotti neglected to consider Otto's physical condition as a possible cause. Newfield also argues Dr. Guidotti's differential diagnosis is unreliable because Dr. Guidotti ruled in a cause, exposure to deadly vapors, that is unsupported by the evidence. Newfield contends

there is no evidence Otto was exposed to deadly vapors in the manner Dr. Guidotti considers.

Dr. Guidotti's report expressly considers Otto's physical condition. The fourth mechanism Dr. Guiddoti considered as a possible cause of Otto's death was "[i]mmediate incapacitation followed by death from natural causes." (Doc. 36-1 at 4). Dr. Guidotti's analysis of the fourth mechanism considered both heart attack and stroke, and included a discussion about Otto's morbid obesity, fatty liver, and enlarged heart. (Doc. 36-1 at 6-7). The Court holds Dr. Guidotti did not fail to consider Otto's physical condition in his differential diagnosis.

Dr. Guidotti appropriately ruled in exposure to deadly vapors as a possible cause of Otto's death. Due to the collective failure of Newfield and others to test the concentration levels at the site at the time of Otto's death, Newfield is correct that there is no direct evidence Otto was exposed to deadly vapors in the manner Dr. Guidotti considers. However, the lack of direct evidence is not fatal to Dr. Guidotti's opinion. First, the oil's Material Safety Data Sheet, produced by Newfield during discovery, establishes the oil produces deadly vapors. (Doc. 53-7). Second, there is ample evidence that workers who manually gauge oil tanks can be exposed to the deadly vapors when they open the tank's hatch. Otto's supplemental expert disclosure included a NIOSH-OSHA (National Institute for Occupational Safety and Health and Occupational Safety and Health

7

Administration) hazard report that discussed in detail the hazards faced by workers who manually gauge oil tanks. (Doc. 36-5). The introduction to the report states:

> Workers at oil and gas extraction sites could be exposed to hydrocarbon gases and vapors, oxygen-deficient atmospheres, and fires and explosions when they open tank hatches to manually gauge or collect fluid samples on production, flowback, or other tanks (e.g., drip pots) that contain process fluids. Opening tank hatches, often referred to as "thief hatches," can result in the release of high concentrations of hydrocarbon gases and vapors. These exposures can have immediate health effects, including loss of consciousness and death.

(Doc. 36-5 at 5). Given that Otto was a worker who manually gauged tanks and that he was found dead near an open hatch, Dr. Guidotti's opinion would be unreliable if it *did not* include exposure to deadly vapors as a possible cause. The Court holds Dr. Guidotti properly ruled in exposure to deadly vapors as a possible cause of Otto's death.

Dr. Guidotti's opinion is reliable because he properly conducted a differential diagnosis to determine the cause of Otto's death. *Clausen*, 339 F.3d at 1057.

### B. Ziegler

Newfield argues Ziegler's opinion is unreliable because it failed to identify the industry standards Newfield violated and also failed to identify what safety measures Newfield should have taken.

8

Newfield's arguments are not well taken. Ziegler's opinion contains numerous references to safety standards, including 43 C.F.R. 3162 et seq., 29 U.S.C. § 654(a), and Newfield's own safety guidelines. (Doc. 36-4 at 9-14). Ziegler's opinion also contains numerous measures Newfield should have taken, including developing a safety program with monitoring and audits, effectively communicating with workers, implementing effective warning signs, utilizing remote measuring equipment, and requiring necessary safety gear such as respirators and other personal protective equipment. (Doc. 36-4 at 9-14, 18). The Court holds Ziegler's opinion is reliable because Ziegler appropriately applied the facts of this case to his knowledge of the industry standards and safety regulations.

## IV. Conclusion.

The opinions of Dr. Guidotti and Ziegler are relevant and reliable. Newfield's challenges go to the weight of the opinions, not the admissibility, and are therefore more appropriate for cross-examination. *See* Fed. R. Evid. 705; *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Newfield's Motion to Strike (Doc. 35) is DENIED.

DATED this 21st day of December, 2016.

SUSAN P. WATTERS
United States District Judge

9