IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BRADLEY P. OTTO, as personal representative of the estate of Blaine P. Otto, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>NEWFIELD EXPLORATION COMPANY; NEWFIELD PRODUCTION COMPANY; and NEWFIELD EXPLORATION MID-CONTINENT, INC.,<br><br>Defendants. | CV 15-66-BLG-SPW<br><br>OPINION AND ORDER |

Before the Court is a Motion for Summary Judgment filed by Defendants Newfield Exploration Company, Newfield Product Company, and Newfield Exploration Mid-Continent, Inc., (Newfield). (Doc. 37). Newfield argues there are no genuine issues of fact and it is entitled to judgment as a matter of law. For the reasons discussed below, the Court DENIES Newfield's Motion for Summary Judgment.

**I. Background.**

Blaine Otto (Otto) was employed by a company that provided tank inspection services, among other things, to Newfield on a contract basis at various

1

well sites in the Bakken Shale Oil Field. (Doc. 1). On July 18, 2013, Otto was found dead on the catwalk of an oil storage tank at a well site in McKenzie County, North Dakota. (Doc. 38, ¶ 1). The well site was operated by Newfield. (Doc. 38, ¶ 2). At least one of the oil storage tank's hatches was open when Otto was found dead. (Doc. 59 at 5).

Otto's estate filed suit, alleging Otto died of exposure to deadly hydrocarbon vapors due to intentional, reckless, and/or negligent conduct by Newfield. (Doc. 1). Newfield disputed the cause of Otto's death, alleging Otto died of natural causes. (Doc. 38, ¶ 3).

The presence or exact concentration of hydrocarbon vapors at the well site at the time of Otto's death are unknown because no measurement was taken during the investigation. (Doc. 55, ¶¶ 27-28). The oil's Material Safety Data Sheet states the oil produces deadly hydrocarbon vapors. (Doc. 53-7). A NIOSH-OSHA (National Institute for Occupational Safety and Health and Occupational Safety and Health Administration) hazard report states in detail the hazards faced by workers who manually gauge oil tanks. (Doc. 36-5). The introduction to the report states:

> Workers at oil and gas extraction sites could be exposed to hydrocarbon gases and vapors, oxygen-deficient atmospheres, and fires and explosions when they open tank hatches to manually gauge or collect fluid samples on production, flowback, or other tanks (e.g., drip pots) that contain process fluids. Opening tank hatches, often referred to as "thief hatches," can result in the release of high

> concentrations of hydrocarbon gases and vapors. These exposures can
> have immediate health effects, including loss of consciousness and
> death.

(Doc. 36-5 at 5).

Otto's estate retained Dr. Tee L. Guidotti (Dr. Guidotti) and Mr. Edward R. Ziegler (Ziegler) as liability experts. Dr. Guidotti is a physician, qualified as a board-certified specialist in internal medicine, pulmonary medicine, and occupational medicine. (Doc. 36-1 at 1). He is also a retired professor of Occupational and Environmental Medicine at the George Washington University Medical Center, where he was Chair of the Department of Environmental and Occupational Health of the School of Public Health and Health Services and Director of the Division of Occupational Medicine and Toxicology, Department of Medicine, School of Medicine and Health Services. (Doc. 36-1 at 1). He has worked with the oil and gas industry for over 35 years and is currently an international consultant. (Doc. 36-1 at 1).

Dr. Guidotti's opinion is that Otto's death was caused by exposure to deadly hydrocarbon vapors. (Doc. 36-1 at 8). Dr. Guidotti formulated his opinion after estimating Otto's level of exposure and reviewing numerous documents and items of evidence, including the autopsy report, the OSHA fatality report, and information disclosed during discovery. (Doc. 36-1 at 1-2). Based on the evidence, Dr. Guidotti listed four possible causes of Otto's death: (1) inhalation of

3

hydrocarbon vapors; (2) depleted oxygen levels due to displacement by hydrocarbon vapors; (3) inhalation of hydrogen sulfide; and (4) natural causes. (Doc. 36-1 at 3-4). Dr. Guidotti then proceeded to eliminate each cause based on its likelihood, concluding inhalation of hydrocarbon vapors was the most likely cause of Otto's death. (Doc. 36 at 3-8). The Court previously found Dr. Guidotti's opinion was both relevant and reliable. (Doc. 75).

Ziegler is a petroleum and natural gas engineer, a registered Professional Engineer, and a Certified Safety Professional. (Doc. 36-4 at 4). He is also trained as an OSHA 500 Program Instructor. (Doc. 36-4 at 4). Ziegler has worked in the oil and gas business for over 35 years. (Doc. 36-4 at 4).

Ziegler's opinion is that Newfield's conduct was grossly below any industry standard. (Doc. 36-4 at 19). Ziegler formulated his opinion after review of numerous documents and pieces of evidence, including safety regulations, the OSHA file, and information disclosed during discovery. (Doc. 36-4 at 3). The Court previously found Ziegler's opinion was both relevant and reliable. (Doc. 75).

## II. Summary Judgment Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment

4

always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The evidence is viewed in the light most favorable to the opposing party and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

## III. Discussion.

The Court previously determined North Dakota law governs this case. (Doc. 40). In North Dakota, negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and resulting injury proximately caused by the breach of the duty. *Forsman v. Blues, Brews, and Bar-B-Ques, Inc.*, 820 N.W.2d 748, 753 (N.D. 2012). To prove causation in a toxic tort case, the plaintiff must show the substance is capable of causing the injuries suffered by the plaintiff (general causation) and that the substance did in fact cause those injuries (specific causation). *Golden v. CH2M Hill Hanford Group, Inc.*, 28 F.3d 681, 683 (9th Cir. 2008).

Newfield argues that it is entitled to summary judgment because there is no direct evidence of the exact concentration of hydrocarbon vapors at the well site at the time of Otto's death. The Court disagrees.

Newfield is correct that speculative evidence cannot defeat a motion for summary judgment. *See Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985). However, reasonable inferences drawn from probative evidence can defeat a motion for summary judgment. *Fresno Motors*, 771 F.3d at 1125. In a toxic tort case, a reasonable estimate of exposure by a reliable expert is often the only way a plaintiff can prove specific causation. *See Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 898 ("Critical to a determination of causation is characterizing exposure . . . [t]he magnitude or concentration of an exposure

6

should be estimated.") (citing Federal Judicial Center, *The Reference Manual on Scientific Evidence* 472 (2d ed. 2000)).

Here, the oil's MSDS states it produces deadly hydrocarbon vapors. (Doc. 53-7). A NIOSH-OSHA hazard report states the deadly hydrocarbon vapors present a hazard to workers who open tank hatches to manually gauge samples. (Doc. 36-5). One of the services Otto provided to Newfield was manually gauging samples. (Doc. 1). Otto was found dead on the catwalk of an oil storage tank with at least one hatch open. (Doc. 38, ¶ 1; Doc. 59 at 5). Newfield operated the well site. (Doc. 38, ¶ 2). Based on a reasonable estimate of Otto's exposure, the autopsy, and circumstances of death, Dr. Guidotti concluded exposure to deadly hydrocarbon vapors was the most likely cause of Otto's death. (Doc. 36-1 at 3-8). Ziegler concluded Otto was exposed to the deadly hydrocarbon vapors because Newfield's conduct fell below industry safety standards, including its failure to: develop a safety program with monitoring and audits, effectively communicate with workers, utilize remote measuring equipment, and require necessary safety gear such as respirators. (Doc. 36-4 at 9-14, 18). A jury faced with this evidence could reasonably infer Otto was killed by deadly hydrocarbon vapors because of Newfield's conduct. Summary judgment is therefore inappropriate.

**IV. Conclusion**

The cause of Otto's death remains a genuine issue of fact. Newfield's Motion for Summary Judgment (Doc. 37) is therefore DENIED.

DATED the 22nd day of December, 2016.

*Susan P. Watters*
SUSAN P. WATTERS
U.S. DISTRICT JUDGE